Citation Nr: 1228229 
Decision Date: 08/16/12 Archive Date: 08/21/12

DOCKET NO. 09-47 795 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial disability rating higher than 10 percent for service-connected chronic sinusitis. 

2. Entitlement to an increased rating for service-connected left knee disability, including an initial rating higher than 10 percent for residuals of left knee injury and separate compensable rating for limitation of motion. 


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


ATTORNEY FOR THE BOARD

A.J. Turnipseed, Counsel


INTRODUCTION

The Veteran served on active duty from May 1984 to September 1992. 

This matter comes before the Board of Veterans' Appeals (Board) from a March 2007 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) above. 


FINDINGS OF FACT

1. The preponderance of the evidence reflects that the Veteran's service-connected sinusitis is manifested by nonincapacitating episodes characterized by ear and sinus pressure and pain, nasal congestion and drainage, and occasional dry cough related to post nasal discharge. 

2. Throughout the appeal period, the Veteran has been prescribed various antihistamines and a corticosteroid nasal spray to treat his sinus symptoms; he has also been prescribed antibiotics approximately two to three times a year, which has lasted no more than four weeks each time. While the evidence shows the Veteran's sinusitis symptoms require treatment by a physician, including antibiotic and other medication treatment, the preponderance of the evidence does not show that the Veteran experiences incapacitating episodes requiring bed rest prescribed by a physician. 

3. The preponderance of the evidence reflects that the Veteran's service-connected residuals of left knee injury are manifested by subjective complaints of constant left knee pain, with occasional complaints of swelling, stiffness, weakness, giving way, and locking, but without objective evidence of instability. There is a history of a sprain to his medial collateral ligament but there is no lay or medical evidence showing that the sprain resulted in a meniscectomy or any residual signs or symptoms. The Veteran's service-connected left has not required surgical treatment and there are no scars on the left knee associated with the disability. 


4. The Veteran has reported experiencing flare-ups of left knee pain occurring between two to three times a week and lasting for five to ten minutes. The objective evidence of record shows that the Veteran has hypertrophy of tibial tuberosity in the left knee secondary to Osgood Schlatter disease, with tenderness to palpation. The impairment of the tibia results in no more than a slight knee disability. 

5. The evidence shows the Veteran experiences limitation of motion in his left knee with objective evidence of mild crepitus with movement; however, flexion is not limited to less than 90 degrees, including with pain, and extension is not worse than five degrees with pain. 


CONCLUSIONS OF LAW

1. The criteria for an initial disability rating higher than 10 percent for service-connected sinusitis are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.321(b)(1), 4.3, 4.7, 4.10, 4.97, Diagnostic Code 6511. 

2. The criteria for an initial disability rating higher than 10 percent for service-connected residuals of left knee injury, with posttraumatic changes of tibial plateau due to fracture of tibial tuberosity and posttraumatic changes to medical collateral ligament, are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.321(b)(1), 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5099-5010 (2011).

3. The criteria for a separate compensable disability rating for limitation of motion of the left knee are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.321(b)(1), 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5261 (2011).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations require VA to provide claimants with notice and assistance in substantiating a claim. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). Proper VCAA notice must inform the claimant of any information and evidence not in the record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183, 186 (2002). These notice requirements apply to all elements of a claim, including the degree and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Proper VCAA notice must be provided prior to the initial unfavorable decision on the claim. Pelegrini v. Principi, 18 Vet. App. 112, 119-20 (2004). 

In this case, the Veteran is challenging the initial disability rating assigned following the grant of service connection. In Dingess, the Court of Appeals for Veterans Claims held that in cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Id. at 490-91. Review of the record reveals that, in July and November 2003, the Veteran was notified of the evidence and information necessary to substantiate his service connection claims. Thus, because the notice that was provided before service connection was granted was legally sufficient, VA's duty to notify in this case has been satisfied.

Nevertheless, the Board also notes that, in July 2006, prior to the unfavorable rating decision in March 2007, the Veteran was informed of the evidence and information necessary to substantiate his increased rating claims (i.e., evidence that his service-connected disability had increased in severity), and the responsibilities of the Veteran and VA in obtaining such evidence. The August 2006 letter also advised him of the evidence and information necessary to establish a disability rating and an effective date, in accordance with Dingess/Hartman. Thus, the Board finds that all required notice has been provided to the Veteran. 

With regard to the duty to assist, all pertinent, identified medical records have been obtained and considered, including VA outpatient treatment records dated from 2002 to 2011. The Board notes that some of the Veteran's treatment records are maintained in his Virtual VA paperless claims file, which is a highly secured electronic repository that is used to store and review documents involved in the claims process. The Board has reviewed the contents of the paperless file, and it is apparent that the RO reviewed all evidence in the paperless claims file as well. 

In addition to the foregoing, the Veteran was afforded several VA examinations in connection with his appeal, including in August 2004, September 2004, February 2007, September 2011, and November 2011. There is no allegation or indication that the VA examinations were not adequate for rating purposes. As such, all rating criteria have been addressed, and the medical evidence of record is sufficient for a fair adjudication of the Veteran's claims. Therefore, the Board will proceed with review of the Veteran's claim based upon all relevant evidence. 

For the foregoing reasons, the Board finds that VA has satisfied its duties to inform and assist the Veteran at every stage in this case. As such, the Veteran will not be prejudiced by a decision on the merits of his claims.

II. Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994). 

When evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use or during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions of 38 C.F.R. §§ 4.40 and 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion, but these diagnostic codes do not subsume the regulations. Additionally, the rule against pyramiding does not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including use during flare-ups. See Johnson v. Brown, 9 Vet. App. 7 (1996); DeLuca, supra. 

In determining the propriety of the initial rating assigned after a grant of service connection, the evidence since the effective date of the grant of service connection must be evaluated and staged ratings must be considered. Staged ratings are appropriate when the evidence establishes that the claimed disability manifested symptoms that would warrant different ratings for distinct time periods during the course of the appeal. Fenderson v. Brown, 12 Vet. App. 119, 126-127 (1999).

Evaluation of Sinusitis

Entitlement to service connection for chronic sinusitis was established in April 2005 and the RO assigned an initial, 10 percent disability rating pursuant to 38 C.F.R. § 4.97, Diagnostic Code (DC) 6511, effective May 16, 2003. 

The Veteran was notified of the RO's decision on June 22, 2005. On June 16, 2006, the Veteran submitted an informal claim seeking an increased disability rating for his service-connected sinusitis disability, which is the basis of the current appeal. As the Veteran expressed disagreement with the disability rating assigned to service-connected sinusitis within the first year following the grant of service connection for such disability, he has established a claim of entitlement to an initial disability rating higher than 10 percent. 

Diagnostic Code 6511 provides the rating criteria for chronic, ethmoid sinusitis and is listed under the General Rating Formula for Sinusitis, which provides that a noncompensable rating is warranted when sinusitis is detected by X-ray only. A 10 percent rating is warranted when there are one or two incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment, or; three to six non- incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting. A 30 percent disability rating is warranted when there are three or more incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment, or; more than six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting. A 50 percent disability rating, the maximum schedular rating, is warranted following radical surgery with chronic osteomyelitis, or; near constant sinusitis characterized by headaches, pain and tenderness of affected sinus, and purulent discharge or crusting after repeated surgeries. See 38 C.F.R. § 4.97, Diagnostic Codes 6510-6514. An incapacitating episode of sinusitis means one that requites bed rest and treatment by a physician. See 38 C.F.R. § 4.97, General Rating Formula for Sinusitis, Note. 

The relevant evidence consists of VA outpatient treatment records dated from 2002 to 2011 and VA examination reports dated August 2004, February 2007, and September 2011. 

The preponderance of the evidence shows that the Veteran's service-connected sinusitis disability is manifested by periodic but recurrent subjective complaints of ear and sinus pressure and pain, with nasal congestion, and nasal drainage of yellowish-green exudate. The Veteran has also complained of an occasional cough related to post nasal drainage. See VA treatment records dated March 2003, June, July, and October 2006, February 2009, January 2010, and May 2011. At the February 2007 VA examination, the Veteran complained of sinus headaches, nasal congestion, intermittent post nasal discharge, and recurring sinus infections. He has also reported that his sinusitis occurs throughout the year without any precipitating factors. See August 2004 VA examination report. 

The objective evidence shows that the Veteran's tympanic membranes are intact but occasionally bulging. See VA treatment records dated June 2004, June 2006, July 2006, October 2006, and July 2007. The Veteran's nasal mucosa are also occasionally inflamed but he is consistently noted to have patent nasal passages. See VA treatment records dated June 2006 and February 2009; see also VA examination reports dated August 2004. 

In sum, the Board finds the preponderance of the evidence shows that the Veteran's sinusitis is primarily manifested by nonincapacitating episodes, characterized by complaints of ear and sinus pressure and pain, with nasal congestion and drainage, as well as occasional dry cough. The evidence shows that, throughout the appeal period, the Veteran has been prescribed various antihistamines and a corticosteroid nasal spray to treat his symptoms. However, the evidence also shows the Veteran has been periodically prescribed antibiotics to treat his sinusitis, beginning in July 2006. See VA treatment records dated July 2006, October 2006, February 2009, and November 2010. 

Indeed, the VA treatment records show that the Veteran received antibiotic treatment approximately two to three times a year between 2008 and 2010 and that such treatment lasted no more than four weeks each time. See various medication lists in VA treatment records; see also January 2010 VA treatment record; VA examination reports dated February 2007 and September 2011. 

While the evidence shows prolonged antibiotic treatment between two to three times each year, there is no lay or medical evidence of record which shows that doctors have also prescribed bed rest to treat the Veteran's sinusitis. Instead, the preponderance of the evidence shows the Veteran has continued to work and be independent in his activities of daily living, despite his sinusitis symptoms. Nevertheless, the evidence shows that, despite the Veteran's antibiotic and other medication treatment, the Veteran continued to experience between two to six nonincapacitating episodes of sinusitis each year. 

Based on the foregoing, the Board finds that the Veteran's service-connected sinusitis disability more nearly approximates the level of disability contemplated by the 10 percent rating under the General Rating Formula for Sinusitis. Indeed, the medical evidence shows no more than six nonincapacitating episodes of sinusitis each year and the Veteran has not provided any credible lay evidence which shows he experiences nonincapacitating episodes of sinusitis more than six times a year. See VA treatment records dated June 2004, June, July, and October 2006, February 2009, January, May, September, and November 2010, and May and October 2011. In addition, while the evidence shows the Veteran's sinusitis symptoms require treatment by a physician, including antibiotic and other medication treatment, the preponderance of the evidence does not show that the Veteran's sinusitis has required bed rest prescribed by a physician. See VA examination reports and treatment records. Therefore, the Board finds the Veteran's service-connected sinusitis is not manifested by incapacitating episodes as contemplated by the General Rating Formula. 

As such, the Board finds the preponderance of the evidence does not warrant the grant of a disability rating higher than 10 percent at any time during the pendency of this appeal. Indeed, the preponderance of the evidence does not show the Veteran experiences incapacitating episodes of sinusitis; nor does the evidence show six or more nonincapacitating episodes of sinusitis per year. In addition, while the physician who conducted the September 2011 VA examination noted that the Veteran has had surgery on his sinuses, the VA treatment records do not document any such surgical treatment for the Veteran's service-connected sinusitis disability and, more importantly, do not show chronic osteomyelitis thereafter or near consistent sinusitis after repeated surgeries. See Addendum #2 to September 2011 VA examination report, dated February 2012; see also VA treatment records dated 2002 to 2011. 

The Board has considered the Veteran's service-connected sinusitis disability under all other potentially applicable provisions of 38 C.F.R. Parts 3 and 4, as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991). However, after careful review of the available diagnostic codes and the medical evidence of record, the Board finds there are no other DCs that provide a basis to assign an evaluation higher than the 10 percent rating currently assigned. 

In summary, and for the reasons and bases set forth above, the Board finds that the preponderance of the evidence is against the grant of a disability rating higher than 10 percent for service-connected sinusitis at any point during the pendency of this appeal. The lay and medical evidence of record has been consistent throughout the pendency of this appeal with respect to the severity of the Veteran's service-connected sinusitis disability and, thus, a staged rating is not warranted. In making this determination, all reasonable doubt has been resolved in the Veteran's favor. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). 

Evaluation of Left Knee Disability

Entitlement to service connection for residuals of left knee injury, with posttraumatic changes of tibial plateau due to fracture of tibial tuberosity and posttraumatic changes to medical collateral ligament (hereinafter "left knee disability"), was established in April 2005. The RO assigned an initial 10 percent disability rating pursuant to 38 C.F.R. § 4.71a, DC 5099-5010, effective May 16, 2003. The Veteran has disagreed with the initial disability rating assigned to his service-connected left knee disability, which is the basis of the current appeal. 

During the pendency of this appeal, the RO granted a separate noncompensable (zero percent) disability rating for limitation of extension of the left knee pursuant to 38 C.F.R. § 4.71a, DC 5261, effective November 21, 2011. While the Veteran has not specifically disagreed with the noncompensable disability rating assigned for limitation of extension of the left knee, the Board will consider whether the Veteran warrants a higher disability rating for his service-connected left knee disability, including all manifestations thereof, such as limitation of extension and any other residual condition related thereto. Indeed, in order to afford the Veteran the highest possible disability rating, the Board will consider his disability under DCs 5010, 5261, and all other potentially applicable diagnostic codes. 

The Veteran's specific disability is not listed on the Rating Schedule, and the RO assigned DC 5099-5010 pursuant to 38 C.F.R. § 4.27, which provides that unlisted disabilities requiring rating by analogy will be coded as the first two numbers of the most closely related body part and "99." See 38 C.F.R. § 4.20. 

The RO determined that the most closely analogous diagnostic code is 38 C.F.R. § 4.71, DC 5010, which provides that arthritis due to trauma, substantiated by X-ray findings will be rated as degenerative arthritis under DC 5003. Under DC 5003, degenerative arthritis substantiated by X-rays will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When, however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic code, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added, under DC 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. See 38 C.F.R. § 4.71a, DC 5003. 

In the absence of limitation of motion, a 20 percent disability rating is warranted with X-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations, and a 10 percent disability rating is warranted with x-ray evidence of involvement of two or more major joints or two or more minor joint groups. See Id. 

Limitation of motion of the knee is rated under DCs 5260 and 5261. Under DC 5260, a noncompensable rating is warranted for flexion limited to 60 degrees, a 10 percent rating is warranted for flexion limited to 45 degrees, a 20 percent rating is warranted for flexion limited to 30 degrees, and a 30 percent rating is warranted for flexion limited to 15 degrees. Under DC 5261, a noncompensable rating is warranted for extension limited to five degrees, a 10 percent rating is warranted for extension limited to 10 degrees, a 20 percent rating is warranted for extension limited to 15 degrees, a 30 percent rating is warranted for extension limited to 20 degrees, a 40 percent rating is warranted for extension limited to 30 degrees, and a 50 percent rating is warranted for extension limited to 45 degrees. 38 C.F.R. § 4.71a, Plate II, indicates that normal flexion of the knee is 140 degrees and normal extension of the knee is zero degrees. 

The pertinent evidence includes VA outpatient treatment records dated from 2002 to 2011 and VA examination reports dated September 2004, February 2007, September 2011, and November 2011. 

The preponderance of the evidence shows that the Veteran's service-connected left knee disability is manifested by subjective complaints of constant left knee pain, with occasional complaints of swelling, stiffness, and weakness. In January 2011, the Veteran reported experiencing giving way in his knee; however, he has otherwise consistently denied any giving way, dislocation, or subluxation of the left knee joint. See VA treatment records and examination reports. The Veteran has reported experiencing occasional locking in his knee about three times a week where he cannot bend his knee without increased pain and stiffness. See September 2004 VA examination report. He has reported experiencing flare-ups of pain which extend down his lateral shin and occur between two to three times a week. The Veteran has reported that his flare-ups last for five to ten minutes and are precipitated by repetitive bending and stooping. See VA examination reports dated September 2004 and September 2011. 

The objective evidence of record shows that the Veteran has hypertrophy of boney prominence just below the patella of the left knee, which is tender to palpation. Indeed, the evidence shows that the Veteran has a prominent tibial tuberosity in the left knee secondary to Osgood Schlatter's disease, which is tender to palpation. See VA examination reports dated September 2004, February 2007, and September 2011; see also August 2005 VA treatment record. 

The preponderance of the evidence shows that the Veteran has limitation of motion in his left knee with objective evidence of mild crepitus with movement. At the September 2004 VA examination, the Veteran was able to demonstrate flexion to 115 degrees, with pain at 90 degrees, while the February 2007 VA examination reports reflects that he was able to demonstrate flexion to 110 degrees, with pain at 96 degrees. In September 2011, flexion was limited to 100 with pain. At the November 2011 VA examination flexion was limited to 130 degrees, with pain at 110 degrees. VA treatment records reflect that the Veteran's range of motion in flexion has been limited to no less than 90 degrees. See August 2005 and July 2009 VA treatment records. 

With respect to extension, the preponderance of the evidence shows the Veteran demonstrated normal extension to zero degrees without objective evidence of pain until the November 2011 VA examination, at which time his extension was limited to five degrees with pain. See also VA treatment records. 

The preponderance of the evidence shows that repetitive motion of the left knee results in increased pain and fatigability, but repetitive motion did not result in a change in range of motion until September 2011, when repetitive testing resulted in flexion limited to 90 degrees. See VA examination reports. 

Nevertheless, the preponderance of the evidence does not contain any lay or medical evidence of muscle spasm, muscle atrophy, laxity or instability in the left knee joint. Nevertheless, the Veteran wears a brace on his left knee for support. In this regard, the evidence shows the Veteran has a history of a sprain to his medial collateral ligament (MCL) but there is no lay or medical evidence showing that the MCL sprain resulted in a meniscectomy or any residual signs or symptoms. See VA examination reports. The Veteran's service-connected left knee disability has not required surgical treatment and, thus, there are no scars on the left knee aassociated with the disability. 

Turning to the merits of the Veteran's increased rating claim, and after considering the lay and medical evidence of record, the Board finds the preponderance of the evidence does not support the grant of an increased rating for the Veteran's service-connected left knee disability at any point during the pendency of this appeal. 

In evaluating the Veteran's claim under DC 5010/5260, the Board notes that, while the Veteran has limited range of motion in flexion, he has not demonstrated flexion limited to less than 90 degrees, including due to pain. See VA examinations and treatment records. Therefore, a compensable disability rating is not warranted under DC 5260 based upon limitation of flexion. 

Likewise, as noted above, the preponderance of the evidence reflects that the Veteran was able to demonstrate normal extension to zero degrees until the September 2011 VA examination where his extension was limited to five degrees due to pain. Limitation of extension to 10 or more degrees in not reflected in the preponderance of the evidence. Therefore, the Board finds a compensable disability rating for limitation of extension is not warranted prior to November 2011 or at any other point thereafter during the appeal period. 

However, the preponderance of the evidence contains consistent, objective evidence of painful motion while demonstrating flexion, for which the initial 10 percent rating was assigned. See April 2005 rating decision. The preponderance of the evidence does not contain X-ray evidence showing that the Veteran's service-connected left knee disability involves two or more major or minor joint groups. Therefore, a disability rating higher than 10 percent is not warranted based upon arthritis, limitation of motion, or painful motion under DCs 5010, 5260 and 5261. 

The Board has considered the Veteran's service-connected left knee disability under all potentially applicable diagnostic codes. However, the evidence does not show that the Veteran experiences ankylosis, as he is able to demonstrate movement in his left knee, albeit limited. Nor does the evidence show that he experience genu recurvatum associated with his service-connected left knee disability. Therefore, DCs 5256 and 5263 are not for application in this case. 

In addition, the evidence does not show that he suffers from recurrent subluxation or lateral instability. In this regard, the Board notes that the September 2011 VA physician stated that there was X-ray evidence of patellar subluxation in the left knee. While the physician's statement is considered competent medical evidence, the Board notes that the other evidence of record, inclusive of the November 2011 VA examination report, the other VA examination reports, and the VA treatment records, do not show that the Veteran experiences subluxation in his left knee joint. Moreover, the preponderance of the evidence reflects that the Veteran's left knee has been stable throughout the pendency of this appeal, as there is only one report of giving way and the objective evidence of record does not contain any evidence of instability on clinical examination. Therefore, the Board finds the preponderance of the evidence does not reflect that the Veteran's service-connected left knee disability is manifested by recurrent subluxation or lateral instability which warrants a separate or higher disability rating under DC 5257. 

The Board has considered the Veteran's left knee disability under DCs 5258 and 5259 for dislocated or removed semilunar cartilage, as the evidence shows the Veteran has a history of an injured and sprained medial collateral ligament. Under DC 5258, a 20 percent rating is warranted for dislocated semilunar cartilage with frequent episodes of "locking," pain, and effusion into the joint, while DC 5259 provides that symptomatic removal of semilunar cartilage warrants a 10 percent disability rating. The Veteran has reported having constant pain and occasional locking in the left knee joint; however, there is no evidence of frequent effusion into the joint. Instead, effusion of the left joint is only demonstrated in an MRI conducted in January 2010. Likewise, as noted, there is no evidence that the Veteran's sprained MCL has been removed or is symptomatic. Therefore, disability ratings are not assignable under DCs 5258 and 5259. 

The Board has also considered the Veteran's service-connected left knee disability under DC 5262, for impairment of the tibia and fibula, given the evidence of hypertrophy of the left tibial tuberosity. Under DC 5262, a 10 percent rating is warranted for malunion of the tibia and fibula with slight knee disability; a 20 percent rating is warranted for malunion of the tibia and fibula with moderate knee disability; a 30 percent rating is warranted for malunion with marked disability; and a 40 percent rating is warranted for nonunion of the tibia and fibula with loose motion and requiring a brace. In this regard, while the evidence shows that the Veteran has tenderness to palpation in the area of the tibial tuberosity, the evidence does not reflect that the left knee tibia impairment is manifested by loose motion or results in a moderate or marked knee disability. Indeed, the Board finds that, despite the evidence of hypertrophy in the tibial tuberosity, the preponderance of the evidence reflects that the Veteran's service-connected left knee disability is no more than slight and results in no more than a mild functional impairment. 

In making this determination, the Board notes that the Veteran has reported experiencing constant pain in his left knee, with occasional reports of swelling, giving way and locking. However, there is no objective evidence of joint laxity or instability and the evidence does not reflect that the Veteran's range of motion is significantly limited in flexion or extension, including with pain. Indeed, the evidence shows that the Veteran is able to continue working and conduct activities of daily living despite his service-connected left knee disability. Therefore, no more than a 10 percent rating is warranted under DC 5262, which does not assist the Veteran in obtaining a higher disability rating for his service-connected left knee disability. The Board finds that a separate rating is not warranted under DC 5262, as the symptoms and functional impairment for which a 10 percent rating would be assigned for a slight knee disability under this code are similar to the symptoms and functional impairment for which the current 10 percent rating is assigned under DC 5099-5010, i.e., painful motion and other functional impairments. See 38 C.F.R. § 4.14. 

In evaluating the Veteran's left knee under the criteria of DeLuca, supra, the Board notes that the Veteran has reported having flare-ups of increased pain. However, the Board notes that the 10 percent rating currently assigned contemplates the Veteran's functional loss due to painful motion. There is no lay or medical evidence of record that shows the Veteran's flare-ups have or likely result in any additional impairment beyond what is contemplated by the current ratings. Therefore, the Board finds that an increased rating is not warranted based on application of 38 C.F.R. §§ 4.40 and 4.45 and DeLuca v. Brown, 8 Vet. App. 202 (1995). 

In summary, and for the reasons and bases set forth above, the Board finds that the preponderance of the evidence is against the grant of an increased rating for the Veteran's service-connected left knee disability. A disability rating higher than 10 percent is not warranted based upon arthritis manifested by limitation of flexion or painful motion at any point during the pendency of this appeal. Likewise, a compensable disability rating for limitation of extension is not warranted at any point during the pendency of this appeal. The lay and medical evidence of record has been consistent throughout the pendency of this appeal with respect to the severity of the Veteran's service-connected left knee disability and, thus, a staged rating is not warranted. In making this determination, all reasonable doubt has been resolved in the Veteran's favor. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). 

Final Considerations

The Board has considered whether this case should be referred for extra-schedular consideration pursuant to 38 C.F.R. § 3.321(b)(1). An extra-schedular rating is warranted if a case presents such an exceptional or unusual disability picture, with such related factors as marked interference with employment or frequent periods of hospitalization, that it would be impracticable to apply the schedular standards. Analysis under this provision involves a three-step inquiry, and extra-schedular referral is necessary only if analysis under the first two steps reveals that the rating schedule is inadequate to evaluate the claimant's disability picture and that such picture exhibits such related factors as marked interference with employment or frequent periods of hospitalization. Thun v. Peake, 22 Vet. App. 111, 115-16 (2008).

In this case, the manifestations of the Veteran's sinusitis and left knee disabilities are fully contemplated by the schedular rating criteria. In particular, the Veteran's sinus pain and pressure, purulent discharge, and antibiotic treatment associated with sinusitis are contemplated by the regulations and rating criteria, as are his painful, limited motion due to arthritis and tibia impairment associated with his left knee disability. As such, the rating criteria reasonably describe the Veteran's disability level and symptomatology, and the rating schedule is adequate to evaluate his disability picture. Therefore, it is unnecessary to discuss the second prong, i.e., whether there are related factors such as marked interference with employment or frequent periods of hospitalization. See id. 

The Board has also considered whether a claim for a TDIU has been raised. When evidence of unemployability is submitted during the course of an appeal from a rating assigned for a disability, a claim for a TDIU will be considered part and parcel of the claim for benefits for the underlying disability. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). In this case, the evidence reflects that the Veteran has been fully employed throughout this appeal, and the Board accordingly finds that a claim for TDIU is not raised by the rating issues on appeal.


ORDER

Entitlement to an initial disability rating higher than 10 percent for service-connected sinusitis is denied. 

Entitlement to an initial disability rating higher than 10 percent for service-connected residuals of left knee injury, with posttraumatic changes of tibial plateau due to fracture of tibial tuberosity and posttraumatic changes to medical collateral ligament, is denied. 




____________________________________________
JOHN H. NILON
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs